UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CITY OF SAN JOSE,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY, et al.,<br><br>   Defendants. | Case No. 5:15-cv-03178-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS**<br><br>Re: Dkt. No. 103 |
| CITY OF OAKLAND,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY, et al.,<br><br>   Defendants. | Case No. 5:15-cv-05152-EJD<br><br>Re: Dkt. No. 81 |
| CITY OF BERKELEY,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY, et al.,<br><br>   Defendants. | Case No. 5:16-cv-00071-EJD<br><br>Re: Dkt. No. 71 |

1

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

In these related cases, Plaintiffs City of San Jose, City of Oakland, and City of Berkeley (the "Cities") seek damages from Defendants Monsanto Company, Solutia Inc., and Pharmacia LLC ("Monsanto"). From the 1930s to the 1970s, Monsanto manufactured and sold products containing environmental contaminants called polychlorinated biphenyls ("PCBs"). The Cities allege that Monsanto's PCBs pollute the San Francisco Bay (the "Bay") through stormwater and dry weather runoff from the Cities, forcing the Cities to spend money to reduce PCB discharge in order to comply with state and federal regulations.

The Cities each allege a single cause of action for public nuisance. Before the Court are Monsanto's motions to dismiss the Cities' first amended complaints. Case No. 15-cv-3178, Dkt. No. 103; Case No. 15-cv-5152, Dkt. No. 81; Case No. 16- cv-71, Dkt. No. 71 (together, "MTD"; these motions are identical). The Cities have filed a single joint opposition. Case No. 15-cv-3178, Dkt. No. 106; Case No. 15-cv-5152, Dkt. No. 84; Case No. 16- cv-71, Dkt. No. 74 ("Opp.").

The Court finds that the Cities have stated a claim for public nuisance. Monsanto's motion to dismiss will be DENIED.

## I.    BACKGROUND

### A.    Facts

The Cities' allegations are largely identical, with some variations (discussed below) regarding their use of captured stormwater and their trusteeship of public land. Case No. 15-cv-3178, Dkt. No. 91 ("San Jose FAC"); Case No. 15-cv-5152, Dkt. No. 81 ("Oakland FAC"); Case No. 16-cv-71, Dkt. No. 71 ("Berkeley FAC") (together, "FACs").

PCBs are synthetic chemical compounds that have become notorious as global environmental contaminants. Id. ¶ 1. PCB exposure can cause a number of health issues in humans, including cancer. Id. ¶ 2. PCBs also destroy populations of fish, birds, and other animal life. Id. ¶¶ 2, 4, 36–46. Until they were banned in the 1970s, PCBs were used in a variety of

2

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

applications, including paint, caulking, electrical equipment, sealants, inks, and lubricants. Id. ¶¶ 5, 33.

The Cities operate municipal stormwater and dry weather runoff systems, which collect runoff and discharge it into the Bay. Id. ¶ 13. When it rains, PCBs often leach into stormwater runoff, causing the Cities to discharge PCBs into the Bay Id. ¶¶ 5–6, 35. As a result, the Bay has become contaminated with PCBs. Id. ¶¶ 7–10.

The U.S. Environmental Protection Agency ("EPA") has approved a PCB Total Maximum Daily Load ("TMDL") for the Bay, which defines the maximum amount of PCBs that the Bay can receive while still meeting water quality standards. Id. Because they discharge stormwater into the Bay, the Cities are required to obtain Municipal Regional Stormwater Permits from the San Francisco Bay Regional Water Quality Control Board. Id. ¶ 13. Each of the Cities has received such a permit, which includes a TMDL that limits the amount of PCBs the Cities may discharge into the Bay through stormwater. Id. ¶¶ 14–15. In 2015, the Water Quality Control Board increased the PCB TMDL, which forced the Cities to spend money to meet the stricter requirements. Id. ¶¶ 17–19. The Cities now seek damages from Monsanto.

### B.   Monsanto's First Motion to Dismiss

In their original complaints, the Cities alleged causes of action against Monsanto for public nuisance and equitable indemnity. Case No. 15-cv-3178, Dkt. No. 1; Case No. 15-cv-5152, Dkt. No. 1; Case No. 16-cv-71, Dkt. No. 1. This Court granted Monsanto's motions to dismiss, finding that (1) the Cities lacked standing to claim public nuisance because they failed to show that they have a property interest in polluted stormwater, and (2) the Cities did not state a claim for equitable indemnity because their costs arose from regulatory requirements rather than from an adverse judgment. Case No. 15-cv-3178, Dkt. No. 85. The Court granted leave to amend only as to the cause of action for nuisance. Id.

### C.   The Cities' First Amended Complaints

The Cities filed their FACs on September 13, 2016, each bringing a single cause of action

3

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

for public nuisance. The Cities now allege damage to three property interests:

(1) contamination of the Cities' stormwater and dry weather runoff systems, which must be retrofitted to remove PCBs;

(2) contamination of tidelands and submerged lands in the Bay that the Cities hold as trustees; and

(3) contamination of stormwater and dry weather runoff that the Cities capture and use.

See Opp. at 1 (summarizing the three property interests at issue in the FACs).

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

### A. The Cities' Public Nuisance Claims

#### i. The Cities allege a property interest in captured stormwater under AB 2594.

A public entity can bring a non-representative nuisance action for damages only if "it has a property interest injuriously affected by the nuisance." Cty. of Santa Clara v. Atl. Richfield Co., 137 Cal. App. 4th 292, 314 (quoting Selma Pressure Treating Co. v. Osmose Wood Preserving Co., 221 Cal. App. 3d 1601, 1616 (1990)).

This Court granted Monsanto's earlier motion to dismiss because the Cities failed to show that they have a property interest in stormwater that flows through municipal pipes to the Bay. Dkt. No. 85 at 6–8. Under the California Water Code, public water belongs to the State of

4

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

California, not to the Cities. Id.; see also Cal. Water Code §§ 1201 ("All water flowing in any natural channel," unless used or appropriated, "is hereby declared to be public water of the State and subject to appropriation in accordance with the provisions of this code."), 10574 (exempting rainwater from the permitting requirements, which implies that rainwater falls within § 1201 and thus belongs to the State); California v. United States, 438 U.S. 645, 652 n.7 (1978) ("Under California law, any person who wishes to appropriate water must apply for a permit from the State Water Resources Control Board.").

But the tides shifted when California enacted AB 2594 on September 23, 2016—about one month after this Court granted Monsanto's earlier motion to dismiss, and ten days after the Cities filed their FACs. AB 2594 added the following language to the California Water Code to allow public entities to capture stormwater and put it to use: "A public entity that captures stormwater from urban areas, in accordance with a stormwater resource plan, before the water reaches a natural channel shall be entitled to use the captured water to the extent that the water augments existing water supplies." Cal. Water Code § 10561.7(a). Monsanto and the Cities agree that the new rule gives the Cities a right to use captured stormwater. See MTD at 16 ("AB 2594 gives new—but limited—use rights" to the Cities to use captured stormwater); Opp. at 6 (AB 2594 creates both "a usufructuary interest . . . and a property right" in captured stormwater). Under the new rule, the Cities "shall be entitled to use the captured water," but the State continues to own it. Cal. Water Code § 10651.7(a).

The right to use the captured water under AB 2594 is a sufficient property interest on which to state a claim for nuisance. See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig, 457 F. Supp. 2d 455, 460 (S.D.N.Y. 2006) ("a usufructuary interest may be acquired and this interest will be deemed to be a 'possessory property right' " for the purposes of a nuisance action); Nat'l Audubon Soc'y v. Sup. Ct., 33 Cal. 3d 419, 441 (1983) ("[T]he right of property in water is usufructuary, and consists not so much of the fluid itself as the advantage of its use. . . . Hence, the cases do not speak of the ownership of water, but only of the right to its use.")

(citations omitted).

Yet, Monsanto argues, the Cities lack that right: even if AB 2594 granted the Cities a right to use <u>captured</u> water, they can have no property interest in water that they <u>abandon and discharge</u> to the Bay. MTD at 16. AB 2594 creates a right to use "<u>captured</u> stormwater to the extent that the water <u>augments existing water supplies</u>." Water discharged to the Bay does not augment existing supplies, and the alleged nuisance exists only in water discharged to the Bay. San Jose FAC ¶¶ 121–35; Oakland FAC ¶¶ 121–36; Berkeley FAC ¶¶ 123–138.

The Cities respond that Monsanto's distinction between "captured" and "abandoned" water overlooks the complexity of the Cities' water systems. According to the Cities, their capture, filtration, and release of stormwater are inseparable parts of a "larger hydrologic system." Jan. 26, 2017, Hr'g Tr. at 29:5. The amended complaints explain how the Cities use a broad array of strategies to collect stormwater, use it, and reintegrate it into the water cycle. For instance, Oakland alleges that it implements rain capture techniques that include "trees that filter pollutants from up to 1,000 of gallons of water annual, rain gardens, disconnected downspouts, pervious surfaces, and rain barrels or cisterns, which capture roof runoff, releasing it safely and slowly into the landscape." Oakland FAC ¶ 50 (quotation marks and citations omitted); <u>see also id.</u> ¶¶ 51–52 (describing "rainwater capture systems that conserve water and reduce flooding, stormwater pollution and erosion, while protecting our local creeks and the Bay") (quotation marks omitted). Berkeley likewise alleges that it implements "green infrastructure projects, catch basins, and rain cisterns/barrels, Rain Gardens, Curb Extensions, Bioswales, Permeable Pavement, and Green Roofs." Berkeley FAC ¶ 55; <u>see also id.</u> ¶ 56 ("the ACCWP Green Streets program augments local water supply through groundwater recharge, 'because less rainwater ends up as runoff and more absorbs slowly into the ground, where it is filtered by soil, feeds plants and replenishes ground water' "). And San Jose alleges that it aims to "maximize water supply" through "infiltration trenches, pervious pavements, biotreatment in tree trenches, flow through planters, bioretention areas, and rainwater harvesting in cisterns." San Jose FAC ¶ 50.

6

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

The Cities' allegations, taken as true, show that their stormwater systems involve more than a binary decision to capture stormwater or abandon it to the Bay. Rather, as Monsanto described it, stormwater management is a "complicated web of hydrology" (Jan. 26, 2017, Hr'g Tr. at 15:14–15), involving capture, filtration, permeation, and discharge of rainfall and dry weather runoff. Whether the captured stormwater ultimately "augments existing water supplies" is a factual question that cannot be resolved on a motion to dismiss. Under AB 2594's amendments to the California Water Code, the Cities' capture of stormwater establishes a property interest on which the Cities successfully state a claim for public nuisance.

### ii. The Cities adequately plead causation.

Causation is a necessary element of a public nuisance claim. In re Firearm Cases, 126 Cal. App. 4th 959, 987 (2005). A defendant is liable if it "created or assisted in the creation of the nuisance." City of Modesto Redevelopment Agency v. Sup. Ct., 119 Cal. App. 4th 28, 38 (2004). Assisting in the creation of the nuisance can mean (1) instructing a polluter to improperly dispose of hazardous substances or (2) manufacturing or installing the disposal system. Team Enters., LLC v. W. Inv. Real Estate Trust, 647 F.3d 901, 912 (9th Cir. 2011).

According to the Cities, Monsanto knew that PCBs were dangerous, concealed that knowledge, promoted the use of PCBs in a range of applications, and gave disposal instructions that were likely to cause environmental contamination. Opp. at 22. The Cities allege that Monsanto believed that the only effective method of disposing of PCBs was high temperature incineration. San Jose FAC ¶ 108. Monsanto built an incinerator and made it available to its customers, for a fee, for disposal of liquid PCB waste—but Monsanto also instructed customers to dispose of solid PCB waste in landfills, where it would inevitably cause environmental contamination. Id. (quoting a Monsanto employee who testified that "we have to reluctantly suggest, because we don't have a better answer, that they find a well operated, properly operated landfill and dispose of the material in that fashion"). Monsanto responds that those disposal instructions were proper because, at the time, no federal regulations prevented disposal of PCB

7

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

waste in landfills; and, in any event, those instructions were guidelines, not mandatory instructions, and they were not distributed nationally. MTD at 27–28. The Court finds that the Cities' allegations are sufficient to show a causal connection between Monsanto's actions and the alleged public nuisance. Monsanto's objections raise factual questions that cannot be resolved at this stage.

Monsanto further contends that it did not "specifically market[] PCBs for placement into the Bay" and that the alleged nuisance arises from third-party uses of PCBs several decades ago. MTD at 29. Yet, under California law, intervening acts by third parties do not break the causal chain where the acts are "reasonably foreseeable, and should have been anticipated." Mosley v. Arden Farms Co., 26 Cal. 2d 213, 218 (1945). Here, the Cities allege that Monsanto was aware of the dangers of PCBs, the likelihood of widespread contamination, and the difficulties of disposal and containment—and that, despite those risks, Monsanto continued to promote the sale of PCBs and continued to encourage third parties to use them in their products. Opp. at 22–24; San Jose FAC ¶¶ 90–96 (alleging that Monsanto was "aware that PCBs were causing widespread contamination of the environment, far beyond the areas of its use"), 105–06 (citing an internal Monsanto report that identified PCBs as "nearly global environmental contaminants," but urged "a number of actions which must be undertaken to prolong the manufacture, sale and use of these particular Aroclors[1]"), and 107 (quoting an internal memo declaring that, despite the hazards of PCBs, Monsanto "can't afford to lose one dollar of business"). The Cities' allegations show that widespread PCB contamination was a reasonably foreseeable consequence of Monsanto's actions.

Monsanto cites Ninth Circuit authority in support of its view that the Cities cannot allege causation. MTD at 30–32. Its cases are distinguishable. First, in Corrie v. Caterpillar, Inc., 403 F. Supp. 2d 1019 (W.D. Wash. 2005), aff'd, 503 F.3d 974 (9th Cir. 2007), Israeli forces used bulldozers to demolish Palestinian homes and kill a peace activist. Victims sued the bulldozer manufacturer. The court granted the manufacturer's motion to dismiss because the causal

---

[1] "Aroclor" was Monsanto's brand name for PCB compounds. San Jose FAC ¶ 3.

8

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

connection between the sale of the bulldozers and the Israelis' actions was too remote to impose liability on the manufacturer. Id. at 1031–32. Here, however, the Cities plausibly allege that Monsanto knew that ordinary uses of PCBs were likely to cause widespread contamination. San Jose FAC ¶¶ 74–116. Second, in Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc., 79 F. Supp. 2d 1219 (W.D. Wash. 1999), aff'd, 241 F.3d 696 (9th Cir. 2001), public hospital districts sued tobacco companies to recover unreimbursed healthcare costs arising from their treatment of tobacco-related diseases. The court held that the claims must be dismissed because they were "completely derivative of the personal injuries to" individual smokers. Id. at 1225, 1229–30. Here, however, the Cities' claims are not derivative: the Cities claim that Monsanto injured them, not others. San Jose FAC ¶¶ 121–35.

Monsanto also cites cases in other jurisdictions that have found a lack of proximate cause in public nuisance claims against Monsanto for PCB pollution. Those cases, too, are distinguishable. First, in City of Bloomington v. Westinghouse Elec. Corp., 891 F.2d 611 (7th Cir. 1989), Westinghouse used PCBs from Monsanto to manufacture electrical equipment. Westinghouse failed to follow Monsanto's instructions for disposal of PCBs, leading to contamination of the city's sewer systems. As a result, the court held that Westinghouse was "solely responsible for the nuisance created by not safely disposing of the product." Id. at 614. In this case, by contrast, the Cities contend that Monsanto itself is directly responsible for the nuisance. The Cities allege that Monsanto's disposal instructions were improper—not that intervening third parties failed to follow them. Second, in Town of Westport v. Monsanto Co., No. 14-12041-DJC, 2015 WL 1321466 (D. Mass. Mar. 24, 2015), the municipal plaintiffs sued for PCB contamination from products that were solely within the plaintiffs' control. Citing City of Bloomington, the court held that the plaintiffs alone were responsible for safely disposing of the products (e.g., light ballasts containing PCBs that were installed in schools). Id. at *3. Both Town of Westport and City of Bloomington involved specific instances of contamination from identified products under the control of parties other than Monsanto; here, however, the Cities allege

9

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

widespread contamination of the Bay by Monsanto itself. Third, in Town of Lexington v. Pharmacia Corp., 133 F. Supp. 3d 258 (D. Mass. 2015), the plaintiffs did not allege a nuisance cause of action; rather, the plaintiffs' claims were based on design defects, failure to warn, and deceptive trade practices. Id. at 260.

Accepting the Cities' claims as true, the Court finds that the Cities have alleged a causal connection between Monsanto's distribution of PCBs and contamination of the Bay.

### iii. The Cities may bring public nuisance claims for damages.

Monsanto argues that the Cities cannot seek damages based on a public nuisance claim against a product manufacturer. MTD at 23–24. Such claims, Monsanto says, are "strongly disfavored in California" because courts view them as "improper end-run[s] around products liability laws." Id. at 24; City of Modesto, 119 Cal. App. 4th at 39 ("the law of nuisance is not intended to serve as a surrogate for ordinary products liability"); City of San Diego v. U.S. Gypsum Co., 30 Cal. App. 4th 575, 585 (1994) (holding that where a city brought a public nuisance claim based on asbestos in its buildings, it had "essentially pleaded a products liability action, not a nuisance action").

Public entities generally may not bring nuisance claims for damages against manufacturers who knowingly sold hazardous products or failed to alert customers to proper methods of disposal. County of Santa Clara, 137 Cal. App. 4th at 308–09; City of Modesto, 119 Cal. App. 4th at 41–42. However, two exceptions exist: product manufacturers can be liable for damages under a public nuisance theory if they (1) "create or assist in creating a system that causes hazardous wastes to be disposed of improperly" or (2) "instruct users to dispose of wastes improperly." Id. at 40–41 (emphasis added); see also id. at 41–42 ("we think a reasonable fact finder might conclude that defendants who manufactured equipment designed to discharge waste in a manner that will create a nuisance, or who specifically instructed a user to dispose of wastes in such a manner, could be found to have caused or permitted a discharge").

As discussed above, the Cities have pled facts showing that Monsanto instructed users to

improperly dispose of PCB waste. See San Jose FAC ¶ 108 (quoting testimony of a Monsanto employee who "reluctantly suggest[ed]" disposal of solid PCB waste in landfills, despite knowing that "the only effective method of disposing of PCBs was high temperature incineration"). Under the second City of Modesto exception, the Cities may pursue damages under a public nuisance theory.

Monsanto also argues that damages are unavailable because "[n]o court has ever awarded permit compliance costs as damages." MTD at 17. The Cities respond that they "seek damages resulting from contamination" of their property, not permit compliance costs. Opp. at 25. "No California law," they argue, "prevents a city from recovering damages because it also complies with certain regulations." Id. The Court agrees that the existence of applicable environmental regulations does not preclude the Cities from pursuing a nuisance claim.

### iv. The complaints do not establish that the Cities' claims are time-barred.

Monsanto argues that the Cities' claims are barred under the applicable three-year statute of limitations because Monsanto stopped manufacturing PCBs in 1979. MTD at 33; Cal. Code Civ. Proc. § 338(b). Any alleged misconduct, Monsanto argues, occurred no later than 1979; and, because the Cities began reducing PCB discharges in 2010 or earlier, the Cities must have known about the alleged harm for well over three years. Id. at 33–34.

However, dismissal based on a statute of limitations defense is only allowed where "the running of the statute is apparent from the face of the complaint." Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1097 (N.D. Cal. 2008). The extent of the Cities' knowledge of PCB contamination, and whether that knowledge limits the available relief, cannot be decided on a motion to dismiss.

### v. The Cities may seek punitive damages and attorneys' fees.

Punitive damages are available when a defendant acts with "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Contrary to Monsanto's assertion, punitive damages are available even if Monsanto did not specifically intend to cause harm to Oakland, Berkeley, and San Jose. Id. §

11
Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

3294(c)(1) (defining "malice" to mean "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others") (emphasis added). The Cities have alleged facts showing that Monsanto may have acted maliciously. See, e.g., San Jose FAC ¶¶ 103–07 (alleging that Monsanto concealed the hazards of PCBs while seeking to maximize profits from PCB sales).

Monsanto argues that the Cities cannot establish grounds for winning attorneys' fees. However, at this stage of litigation, the Court cannot determine whether a basis for a fee award may arise.

### B. Exhaustion of Administrative Remedies

Under California law, parties seeking reimbursement for costs to comply with unfunded State mandates must exhaust administrative remedies before seeking relief from courts. Abelleira v. Dist. Ct. of App., 17 Cal. 2d 280, 292 (1941).

On August 29, 2016—one week after this Court granted Monsanto's earlier motion to dismiss—the California Supreme Court issued an opinion holding that certain water permit obligations constitute an "unfunded State mandate," not a federal mandate, and therefore the State of California must reimburse municipalities for the costs of compliance. Dep't of Fin. v. Comm'n on State Mandates, 1 Cal. 5th 749 (2016). The scenario in Department of Finance was similar to the events underlying this case. Various municipalities operated storm sewer systems that discharged waste and pollutants. Id. at 754–755. A State agency issued a permit that required the operators to take steps to reduce contamination, including installing trash receptacles and conducting inspections of industrial and commercial sites. Id. Under California law, the State must reimburse local governments when it creates rules that exceed the requirements of federal mandates. Id. at 762–64. The operators argued that they were entitled to reimbursement because the State's pollution control mandate was stricter than the federal requirements. Id. at 760–61. The California Supreme Court agreed. Id. at 767–61.

In light of Department of Finance, Monsanto argues that the Cities cannot seek relief in this Court until they exhaust their administrative remedies to recover permit compliance costs from the State. MTD at 8–10; Reply at 3–5. According to Monsanto, the Cities are currently pursuing administrative actions before the Commission on State Mandates for reimbursement for the same compliance costs that they seek to recover from Monsanto in this case. Reply at 5 n.4. The Commission has requested additional briefing regarding the effect of Department of Finance and has set a tentative hearing for May 2017. Id.

The Cities argue that Department of Finance does not apply because it did not involve reimbursement for damages caused by third-party tortfeasors. Opp. at 28. During the hearing on this motion, the Cities clarified that this case seeks relief for damages that are not at issue in the pending administrative proceedings. Jan. 26, 2017, Hr'g Tr. at 47–48.

The Court finds that further argument is required to assess the impact of Department of Finance on this case. The Court will invite the parties to submit additional briefing on whether this case should be dismissed or stayed until the Cities have exhausted their administrative remedies.

## IV.  REQUESTS FOR JUDICIAL NOTICE

Under Fed. R. Evid. 201, the Court GRANTS Monsanto's Request for Judicial Notice in Case No. 15-cv-3178 (San Jose), Dkt. Nos. 104 and 108; Case No. 15-cv-5152 (Oakland), Dkt. Nos. 82 and 86; and Case No. 16-cv-71 (Berkeley), Dkt. Nos. 72 and 76.

## V.  CONCLUSION

The Cities have stated a claim for public nuisance based on PCB contamination. The Court orders as follows:

1.  Monsanto's motions to dismiss are DENIED.

2.  Monsanto may file a motion to dismiss or stay this case. Monsanto's motion shall only address whether this case can proceed if the Cities have not exhausted their administrative remedies in light of Dep't of Fin. v. Comm'n on State Mandates, 1 Cal. 5th 749 (2016). Monsanto's motion shall be no longer than 15 pages of text. The Cities may file a joint opposition

13

Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS

that shall be no longer than 15 pages of text. Monsanto may file a reply that shall be no longer than 10 pages of text.

**IT IS SO ORDERED.**

Dated: February 3, 2017



EDWARD J. DAVILA
United States District Judge

14
Case No.: 5:15-cv-03178-EJD
ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS